NORTH IOWA BRICK & TILE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5655. Promulgated March 9, 1928.

*A. F. Schaetzle, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the respondent.

## OPINION.

TRUSSELL: It is evident from the record that Colby acquired his option contract for the purchase of the lands acquired by the petitioner at the then prevailing farm land prices. When this land was acquired by the petitioner it was a proven tract of clay, sand, and

shale lands of a high grade and especially suitable for the manufacture of brick and tile. The farm land value at which Colby secured his tract is not the measure of the value of the land acquired by the petitioner. *Huron Portland Cement Co.*, 9 B. T. A. 181; *Northwestern States Portland Cement Co.*, 7 B. T. A. 835. The prices at which sales of comparable clay land properties, as set forth in the findings of fact, together with the testimony of witnesses having long experience in the local field in the manufacture of clay products, have led us to the conclusion that at the time petitioner acquired its clay lands, said lands had a cash value of $500 per acre, or $74,167, and that in the computation of invested capital said lands should be reflected at that figure and the invested capital for the taxable years should be built up on the basis of the land value here found plus cash paid in for stock and accumulated undivided profits.

There is testimony in the record to the effect that some of the items included in petitioner's plant construction account such as kilns had a usual useful life of about 10 years; stacks, 15 years; and that the kilns, stacks and dryers constituted between 60 and 75 per cent of the cost of the plant. The record, however, does not show the cost of any of these items of construction or equipment, nor does it show how the same were repaired or replaced, and whether replacements were charged to capital. We are, therefore, of the opinion that we are without sufficient evidence to warrant us in disturbing a depreciation computation as made by the respondent, and in respect to the railroad spur the record leads us to believe that the railroad company in operating this spur for the benefit of the petitioner provides for all the necessary maintenance to keep the same in effective working condition, and, in view of the fact that the contract with the railroad company is not shown, we do not feel warranted in allowing a depreciation of this item which the respondent has rejected.

In the adjustment of invested capital there should be reflected a depletion reserve computed upon the per acre cost of the clay deposits as determined by the findings herein. The allowance of a deduction for depletion should be computed upon the basis of the per acre value of such deposits on March 1, 1913, as found by the respondent and the difference between the depletion deduction computed upon cost and the deductions allowed upon the 1913 value should be restored to surplus for the invested capital computation. *Entress Brick Co.*, 9 B. T. A. 588.

The deficiencies should be recomputed in accord with the findings of fact and the foregoing opinion.

Reviewed by the Board.

*Decision will be entered on 15 days' notice, pursuant to Rule 50.*